1  DENISE M. VISCONTI, Bar No. 214168
   dvisconti@littler.com
2  LILIYA STANIK, Bar No. 259977
   lstanik@littler.com
3  LITTLER MENDELSON, P.C.
   501 W. Broadway, Suite 900
4  San Diego, CA 92101.3577
   Telephone: 619.232.0441
5  Facsimile: 619.232.4302

6  Attorneys for Defendants
   VICTORIA FIRE & CASUALTY COMPANY;
7  TITAN AUTO INSURANCE OF NEW MEXICO,
   INC.; AND NATIONWIDE MUTUAL
8  INSURANCE COMPANY

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12 MARCOS RAMIREZ, RENE GOMEZ      | Case No. EDCV 13-00672-R-JEM
   and REYES DUARTE II, on behalf of |
13 themselves and all others similarly |
   situated,                          |
14                                    | MEMORANDUM OF POINTS AND
                Plaintiffs,           | AUTHORITIES IN SUPPORT OF
15                                    | DEFENDANTS' OPPOSITION TO
   v.                                 | PLAINTIFF'S MOTION TO
16                                    | REMAND TO STATE COURT
   TITAN AUTO INSURANCE OF           |
17 NEW MEXICO, INC., a New Mexico     | Class Action Fairness Act
   corporation; NATIONWIDE          |
18 MUTUAL INSURANCE COMPANY,          | Date:        June 3, 2013
   an Ohio corporation; VICTORIA FIRE | Time:        10:00 A.M.
19 & CASUALTY COMPANY, an Ohio        | Courtroom:   8
   corporation; and DOES 1 to 100,    |
20 inclusive,                         | Filed:       August 7, 2012
                                      | Removed:     April 12, 2013
21              Defendants.           |
                                      | (Originally filed in Riverside County
22                                    | Superior Court, Case No. RIC 1211890)

23

24

25

26

27

28

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    THIS MATTER IS A REPEAT OF AN EARLIER-FILED ACTION OVER WHICH THIS COURT HAD ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ............... 1

    A.    Plaintiffs' Claims Are Far-Reaching ........................................... 1

    B.    Plaintiffs' Complaint Is Duplicative Of An Earlier-Filed Action ........... 2

III.    DEFENDANTS WRE REQUIRED TO ESTABLISH THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BY A PREPONDERANCE OF THE EVIDENCE ........................................................ 4

    1.    The U.S. Supreme Court Recently Opined That A Named Plaintiff In A Class Action Cannot Artificially Limit The Damages Sought By The Class ........................................................ 5

    2.    The Court Cannot Consider Plaintiffs' Improper Attempt To Limit The Damages When Evaluating Whether the Jurisdictional Limits of CAFA Have Been Met ............................. 5

IV.    DEFENDANTS EVIDENCE CLEARLY ESTABLISHED THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 ................................. 7

    A.    Plaintiff Gomez's Deposition Testimony Alone Meets The Jurisdictional Minimum As To Plaintiffs' First Cause of Action For Wages Due ........................................................................... 8

    B.    Defendants' Calculations on Removal Were More Than Conservative With Regard To The Amount In Controversy ................. 10

    C.    Defendants Submitted Additional Evidence That Only Bolsters Plaintiff Gomez's Deposition Testimony Regarding The Amount In Controversy ...................................................................... 12

    1.    The Declaration Of Daniel Hatt Provided Underlying Facts That Supported Defendants' Notice of Removal ......................... 13

    2.    The Declaration Of Jessica Hooper Further Bolsters Defendants' Notice of Removal .................................................. 16

V.    DEFENDANTS NOTICE OF REMOVAL WAS TIMELY FILED ............... 16

VI.    THIS CASE IS THE EPITOME OF THE ABUSE AND TACTICS THAT CAFA WAS ENACTED TO PREVENT ............................................. 17

VII.    THERE IS NO BASIS FOR THE COURT TO AWARD SANCTIONS ........ 19

VIII.    THERE IS NO BASIS FOR THE COURT TO REMAND THIS MATTER SUA SPONTE ........................................................................ 19

1

2

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

3

IX.   CONCLUSION ................................................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

1

# TABLE OF AUTHORITIES

2

3

4

**Page(s)**

5

CASES

6

*Abrego Abrego v. The Dow Chemical Co.,*
7
    443 F.3d 676 (9th Cir. 2006)...................................................................6, 10

8

*Borgman v. Insphere Ins.,*
9
    2013 U.S. Dist. LEXIS 50515 (D. Cal. 2013) ...........................................19

10

*Bryan v. Wal-Mart Stores,*
    2009 U.S. Dist. LEXIS 18555 (N.D. Cal. 2009)..........................................7
11

12

*Carvalho v. Equifax Info. Servs.,*
    629 F.3d 876 (9th Cir. Cal. 2010)..............................................................17

13

*Cohn v. Petsmart, Inc.,*
14
    281 F.3d 837 (9th Cir. 2002) .................................................13, 14, 15

15

*Galt G/S v. Jss Scandinavia,*
16
    142 F.3d 1150 (9th Cir. 1998) .....................................................................8

17

*Gaus v. Miles, Inc.,*
18
    980 F.2d 564 (9th Cir. 1992)....................................................................6, 8

19

*Harris v. Bankers Life and Casualty Co.,*
20
    425 F.3d 689 (9th Cir. 2005).................................................................15, 17

21

*Isr. Disc. Bank, Ltd. v. Schnapp,*
22
    215 Fed. Appx. 605 (9th Cir. Cal. 2006) ...................................................20

23

*Jones v. WalMart Stores, Inc.,*
    C.D. CV 12-10799 MMM, slip op. ...........................................................14
24

25

*Kelton Arms Condominium Owners Ass'n v. Homestead Ins. Co.,*
    346 F.3d 1190 (9th Cir. 2003) ..................................................................20

26

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,*
27
    199 F.Supp.2d 993 (C.D. Cal. 2002)...........................................................9

28

1
2

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

3
4
*Korn v. Polo Ralph Lauren Corp.*,
  536 F.Supp.2d 1199 (E.D. Cal. 2003)............................................................7

5
6
*Levine v. BIC USA, Inc.*,
  2007 U.S. Dist. LEXIS 60952 (S.D. Cal. August 19, 2007)......................9

7
8
*Lowdermilk v. U.S. Bank Nat'l Assoc.*,
  479 F.3d 994 (9th Cir. 2007).........................................................5, 6, 15

9
*Quintana v. Claire's Stores*,
  2013 U.S. Dist. LEXIS 58289 (N.D. Cal. Apr. 22, 2013).........................6

10
11
12
13
*Rebecca Houpt v. Eastwood Insurance Services, Inc.*, *Victoria Fire & Casualty Company, Titan Auto Insurance of New Mexico, Inc., and Nationwide Mutual Insurance Company*,
  Case No. CV10-7726-R(JEMx) (the "*Houpt* Action") ................................ passim

14
*Rippee v. Boston Market*,
  408 F.Supp.2d 982 (S.D. Cal. 2005)............................................................7

15
16
*Sanchez v. Monumental Life Inc.*,
  102 F.3d 398 (9th Cir. 1996).......................................................................7

17
18
*Scherer v. Equitable Life Assurance Society of the U.S.*,
  347 F.3d 394 (2d Cir. 2003)........................................................................7

19
20
*Singer v. State Farm*,
  116 F.3d 373 (9th Cir. 1997)......................................................................13

21
22
*Standard Fire Insurance Co. v. Knowles*,
  568 U.S. __, 133 S. Ct. 1345 (2013)...................................................5, 6, 19

23
24
*Valdez v. Allstate Ins.*,
  372 F.3d 1115 (9th Cir. 2004).............................................................. passim

25
STATUTES

26
28 U.S.C. § 1332(a)...............................................................................11

27
28 U.S.C. § 1332(d)(6)...........................................................................4

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

28 U.S.C. § 1441(a) ..................................................................................................4

28 U.S.C. § 1446(b)(1), (3) ...................................................................................15

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) ...................1, 4

Labor Code § 203 ................................................................................................2, 3

Labor Code § 204 ................................................................................................2, 3

Labor Code §§ 221, 223 ......................................................................................2, 3

Labor Code §§ 226 ..............................................................................................2, 3

Labor Code §§ 510, 1194, 1197, 1198 ...............................................................2, 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ...................................................................................10, 13, 14

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

iii.

Defendants Titan Auto Insurance Of New Mexico, Inc. ("Titan"), Nationwide Mutual Insurance Company ("Nationwide"), and Victoria Fire & Casualty Company ("Victoria," collectively "Defendants"), hereby oppose Plaintiffs Marcos Ramirez ("Ramirez"), Rene Gomez ("Gomez"), and Reyes Duarte II's ("Duarte," collectively "Plaintiffs") Motion to Remand to State Court ("Motion").

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The parties to this Motion and to this case have been before this Court previously when, in November 2011, Defendants removed to this Court a putative class action filed on behalf of the exact same class of plaintiffs pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  *See Rebecca Houpt v. Eastwood Insurance Services, Inc.*, *Victoria Fire & Casualty Company, Titan Auto Insurance of New Mexico, Inc., and Nationwide Mutual Insurance Company*, Case No. CV10-7726-R(JEMx) (the "*Houpt* Action").[1]  As the United States Court of Appeals for the Ninth Circuit found then, such is true now: the amount put in controversy by the allegations contained in Plaintiffs' Complaint, as shown by the deposition of one of the named Plaintiffs, is at least $5 million.  Therefore, Defendants properly and timely removed this matter to this Court, where jurisdiction pursuant to CAFA is properly vested.

## II.    THIS MATTER IS A REPEAT OF AN EARLIER-FILED ACTION OVER WHICH THIS COURT HAD ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

### A.    <u>Plaintiffs' Claims Are Far-Reaching.</u>

Plaintiff Ramirez was a Sales Agent who alleges he worked in Defendants' Anaheim Hills and Corona offices for ten years before he left his employment. Plaintiffs' Complaint ¶ 9 (Declaration of Denise M. Visconti ("Visconti Decl."), ¶ 2, Ex. A) ("Compl.").  Plaintiff Gomez was a Sales Agent who alleges he worked in

---

[1] As has this set of Plaintiffs' counsel, as both Complaints were filed by Kevin T. Barnes, Esq. and Gregg Lander, Esq. of the Law Office of Kevin T. Barnes, and Ross E. Shanberg, Esq. and Shane C. Stafford. Esq. of Shanberg, Stafford & Bartz, LLP.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

1  Defendants' Cerritos office for fourteen years before he left his employment. Compl.

2  ¶ 10.   Plaintiff Duarte was a Sales Agent who alleges he worked in Defendants'

3  Cerritos office for eight years before he left his employment. Compl. ¶ 11.

4         In August 2012, Plaintiffs filed a purported class action Complaint on behalf of

5  themselves and all "similarly situated" "California-based 'Sales Agent' positions

6  (hereinafter including any of Defendants' job positions with substantially similar titles

7  and/or duties)" who worked for Defendants at any time between "four (4) years

8  preceding the filing of the original Complaint herein, up to and through the time of

9  trial for this matter." *See* Compl. ¶¶ 3, 4.  Plaintiffs' Complaint alleged violations of:

10  (i) Labor Code §§ 510, 1194, 1197, 1198 for Defendants' alleged failure to pay

11  Plaintiffs and the putative class members for all hours of either straight-time or

12  overtime worked; (ii) Labor Code §§ 221, 223 for Defendants' alleged unlawful

13  deductions of commissions; (iii) Labor Code §§ 226 for Defendants' alleged failure to

14  maintain accurate records and provide accurate wage statements to Plaintiffs and the

15  putative class members; (iv) Labor Code § 203 for Defendants' alleged failure to pay

16  earned wages due at the time of Plaintiffs' and the putative class members'

17  termination; (v) Labor Code § 204 for Defendants' alleged failure to timely pay

18  Plaintiffs and the putative class members their wages each pay period; and

19  (vi) Business & Professions Code § 17200 for Defendants' alleged unfair business

20  practices. *See* Compl. ¶¶ 38-100.

21      **B.    Plaintiffs' Complaint Is Duplicative Of An Earlier-Filed Action.**

22         This class of Plaintiffs has been before this Court previously, alleging the same

23  claims and seeking the same damages on behalf of the same class of individuals

24  against the same Defendants.  *See, generally, Houpt* Action.   Specifically, the

25  Complaint in the *Houpt* Action sought relief on behalf of the exact same purported

26  class of "California-based 'Sales Agent' positions (hereinafter including any of

27  Defendants' job positions with substantially similar titles and/or duties)" who worked

28  for Defendants at any time between "four (4) years preceding the filing of the original

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

2.

Complaint herein, up to and through the time of trial for this matter."  *See* Complaint in the *Houpt* Action ¶¶ 3, 4 (Visconti Decl., ¶ 5, Ex. C) ("*Houpt* Compl.").  Moreover, like the instant Complaint filed by Plaintiffs, the *Houpt* Action alleged claims against Defendants on behalf of California-based Sales Agents for violations of: (i) Labor Code §§ 510, 1194, 1197, 1198 for Defendants' alleged failure to pay the putative class members for all hours worked; (ii) Labor Code §§ 221, 223 for Defendants' alleged unlawful deductions of commissions; (iii) Labor Code §§ 226 for Defendants' alleged failure to furnish accurate wage statements; (iv) Labor Code § 203 for Defendants' alleged failure to pay wages owed at the time of the putative class members' termination; (v) Labor Code § 204 for Defendants' alleged failure to timely pay the putative class members; and (vi) Business & Professions Code § 17200 for Defendants' alleged unfair business practices.  *Compare* Compl. ¶¶ 38-100 *with Houpt* Compl. ¶¶ 38-149.[2]

After the Ninth Circuit (i) found in the *Houpt* Action that Defendants had satisfied the jurisdictional requirements of CAFA, and (ii) refused to review this Court's order striking the class action allegations after the plaintiff in the *Houpt* Action failed to timely move for class certification as was required by Local Civil Rule 23-3, the plaintiff in the *Houpt* Action dismissed her claims.  *See* Visconti Decl. ¶¶ 6-8; Memorandum from the Ninth Circuit Court of Appeals, July 18, 2011; Order from the Ninth Circuit Court of Appeals, February 16, 2012 (Visconti Decl., Ex. D, E).

Counsel for plaintiff in the *Houpt* Action now have located three new members of the exact same putative class and – after deleting and refining select allegations that the Ninth Circuit found "vague and ambiguous" – re-filed their action, this time in the

---

[2] The Complaint in the *Houpt* Action also asserted claims for meal and rest break violations, which are not pled in the instant case; however, the remaining allegations are virtually identical and seek the same relief on behalf of the same putative class members as in the instant case.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

3.

Superior Court for the County of Riverside (instead of the County of Los Angeles, where the Complaint in the *Houpt* Action was filed). *Id.* ¶ 2, Ex. A. Upon receiving evidence regarding the amount of overtime Defendants allegedly owed putative class members from one of the Named Plaintiffs' depositions, Defendants determined this action similarly involved amounts in excess of the jurisdictional minimum required by the CAFA and removed the action to this Court.

Plaintiffs once again seek to remand this matter to state court.

## III. DEFENDANTS WRE REQUIRED TO ESTABLISH THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BY A PREPONDERANCE OF THE EVIDENCE.

A civil action in a state court may be removed to a federal district court if the district court had original jurisdiction over the matter at the time the plaintiff filed the complaint. 28 U.S.C. § 1441(a). CAFA provides that the district courts have original jurisdiction over any civil class action in which: the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the total number of class members is 100 or greater; and any member of the plaintiff class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d).[3] In assessing the amount in controversy, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds ... $5,000,000." 28 U.S.C. § 1332(d)(6).

Plaintiffs do not contest the fact that this is a class action involving over 100 class members, nor do they dispute that the minimal diversity requirement is met. *See* Motion, *passim.* They do, however, contend Defendants must prove the amount in controversy exceeds $5,000,000 by a "legal certainty" insofar as they believe they capped the amount in controversy in their Complaint at $5,000,000 and successfully pled around federal jurisdiction. Plaintiffs claim this is a hurdle Defendants cannot overcome. They are wrong on both counts.

---

[3] As established in Defendants' Notice of Removal to Federal Court, the number of class members in this action exceeds 100, all of the Plaintiffs are citizens of California, and all of the Defendants are citizens of Ohio and New Mexico. *See* Docket No. 1, Notice of Removal ¶¶ 12-18, 23.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

4.

1

    **1.    The U.S. Supreme Court Recently Opined That A Named Plaintiff In A Class Action Cannot Artificially Limit The Damages Sought By The Class.**

2

On March 19, 2013, the U.S. Supreme Court, in *Standard Fire Insurance Co. v. Knowles,* 568 U.S. __, 133 S. Ct. 1345 (2013), opined that a class action plaintiff <u>could not</u> artificially limit by way of stipulation the amount of damages he and the putative class would seek to recover to less than five million dollars in order to avoid federal jurisdiction. According to the unanimous decision of the *Standard Fire* Court, a class action named plaintiff lacked authority to bind the entire class *to anything* prior to class certification. *Standard Fire,* at 1349. Therefore, because the plaintiff in *Standard Fire* could not bind anyone but himself, he was unable to reduce the value of the putative class members' claims below the statutory threshold required for federal jurisdiction under CAFA.

Instrumental for this case, the *Standard Fire* Court further opined that, when evaluating and deciding jurisdictional matters, federal judges must *do what the CAFA statute requires*, namely "aggregat[e]" the "claims of the individual class members" to determine the amount in controversy alleged as a result of the claims in the complaint. *Standard Fire,* at 1350. In so doing, the District Court must "ignore[]" the plaintiff's stipulation regarding the amount of damages sought on behalf of class members. *Id.*

    **2.    The Court Cannot Consider Plaintiffs' Improper Attempt To Limit The Damages When Evaluating Whether the Jurisdictional Limits of CAFA Have Been Met.**

Based on the U.S. Supreme Court's decision in *Standard Fire,* the Court must evaluate the "claims of the individual class members," and in so doing <u>ignore</u> the artificial limit Plaintiffs attempted to place on the damages at issue by virtue of their allegations. *See Standard Fire,* at 1350. When the Plaintiffs' improper allegations regarding the purported amount in controversy is ignored, and the "claims of the individual class members" are evaluated without such allegation, whether or not Defendants met the amount in controversy in removing the case must be adjudged by a preponderance of the evidence. *See Lowdermilk v. U.S. Bank Nat'l Assoc.,* 479 F.3d

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

5.

994, 998 (9th Cir. 2007) (absent allegations of a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met," *citing Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 683 (9th Cir. 2006), and *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)).

Indeed, as Judge Grewal of the United States District Court for the Northern District of California recently noted:

> the Supreme Court's recent decision in *Standard Fire Insurance Co. v. Knowles*, further supports consideration of the entire complaint for an assessment of the amount in controversy. In [*Standard Fire*], the Court held that plaintiffs in putative class actions cannot stipulate to damages below the threshold minimum to avoid federal jurisdiction because they cannot bind the absent class members before class certification. Although Plaintiffs have not stipulated to damages less than $5 million, an <u>assessment of the entire complaint appears nevertheless necessary to determine whether they are attempting to avoid federal jurisdiction by not pursuing the entire amount in damages to which the putative class is entitled.</u>

*Quintana v. Claire's Stores*, 2013 U.S. Dist. LEXIS 58289 *13 n.35 (N.D. Cal. Apr. 22, 2013) (finding the preponderance of the evidence standard applied to evaluate the amount in controversy, requiring the court to evaluate all of the claims raised in the complaint in spite of plaintiffs' stipulation as to the amount in controversy).

Such is the case here. Although Plaintiffs allege in conclusory fashion that their claims and request for damages "do not exceed an aggregate of $4,999,999.99," the Court is required to ignore such allegation. *See Standard Fire,* 133 S. Ct. at 1350. Rather, the Court must assess the entire Complaint, "aggregat[e]" the "claims of the individual class members," and make an independent determination as to whether the jurisdictional requirements of CAFA are satisfied. In so doing, the Court must determine whether Defendants proved "by a preponderance of the evidence that the amount in controversy requirement has been met." *Lowdermilk,* 479 F.3d at 998; *Abrego Abrego,* 443 F.3d at 683; *Gaus,* 980 F.2d at 566.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

6.

When evaluating Plaintiffs' claims under such standard, and the evidence presented by Defendants with their Notice of Removal and submitted herewith, it is clear Defendants proved by a preponderance of the evidence[4] that the amount in controversy exceeded $5 million, vesting jurisdiction in this Court.

## IV.  DEFENDANTS EVIDENCE CLEARLY ESTABLISHED THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.

Under the "preponderance of the evidence" standard, Defendants must establish the amount in controversy is "more likely than not" in excess of $5 million. *Sanchez v. Monumental Life Inc.*, 102 F.3d 398, 404 (9th Cir. 1996).  The preponderance of the evidence standard is not "daunting" because Defendants are <u>not</u> obligated to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-05 (E.D. Cal. 2003); *Rippee v. Boston Market*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) (the ultimate inquiry is what amount is put "in controversy" by the complaint, not what defendant actually will owe); *Scherer v. Equitable Life Assurance Society of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; it is the amount put in controversy by plaintiff's complaint).  Furthermore, the proponent of federal jurisdiction is *not* required to conduct a fact-specific inquiry into whether the rights of each and every potential class member were violated. *Bryan v. Wal-Mart Stores*, 2009 U.S. Dist. LEXIS 18555, *10 (N.D. Cal. 2009); *Valdez v. Allstate Ins.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

As outlined below, Defendants have demonstrated it is "more likely than not" the amount in controversy on Plaintiffs' First Cause of Action, *alone,* is in excess of $5 million, without even considering attorney's fees or *any* of the remaining causes of

---

[4] Even if the Court were to find that Defendants were required to prove the amount in controversy to a "legal certainty," Defendants nonetheless have met that standard too.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand                                    7.

1   action alleged in their Complaint.  *Galt G/S v. Jss Scandinavia*, 142 F.3d 1150, 1156

2   (9th Cir. 1998) (attorney's fees includable in the amount in controversy under CAFA).

3   Furthermore, when considering the *entire* Complaint and aggregating the "claims of

4   the individual class members," the amount in controversy by virtue of Plaintiffs'

5   allegations clearly exceeded $5 million.

6   **A.    Plaintiff Gomez's Deposition Testimony Alone Meets The
        Jurisdictional Minimum As To Plaintiffs' First Cause of Action For**

7   **Wages Due.**

8       To establish the amount in controversy, a defendant "must set[ ] forth ... the

9   *underlying facts* supporting its assertion that the amount in controversy exceeds" the

10  statutory minimum.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) (emphasis

11  added).   Here, Defendants provided admissible evidence of the "underlying facts"

12  regarding the size of the putative class through the Declaration of Daniel Hatt in

13  Support of Defendants' Notice of Removal ("Hatt Decl."), Docket No. 2.  Using the

14  sworn testimony regarding class size, plus the testimony of Plaintiff Gomez regarding

15  the amount of damages suffered by putative class members construed against

16  Plaintiffs' allegations as to Defendants' wrongdoing, Defendants clearly demonstrated

17  the amount in controversy is "more likely than not" in excess of $5 million.

18      Specifically, Plaintiffs alleged in their Complaint that "<u>as a matter of</u>

19  <u>established company policy and procedure, at each and every one of the individual</u>

20  <u>facilities owned and/or operated by Defendants</u>," Defendants required California-

21  based Sales Agents to "work without paying for all time they were under Defendants'

22  control."  Complaint ¶ 46.  As Plaintiff Gomez testified during his deposition, as a

23  result of this purported policy, he worked twenty (20) hours a week off-the-clock,

24  each week, from 2009 through 2011 or a total of two-thousand (2000) hours, for

25  which he was not paid and for which he believes he is owed overtime wages.  *See*

26  Gomez Deposition, p. 119:1-7 (Visconti Decl., ¶ 3, Ex. B).  Plaintiffs – including

27  Plaintiff Gomez – alleged in their Complaint that this policy, and their claims of

28  overtime owed, were "typical of the claims of all members of the Classes they seek to

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand                                    8.

represent because <u>all members of the Classes sustained injuries and damages arising out of Defendants' common course of conduct in violation of law</u> ..."  Compl. ¶ 36 (Visconti Decl., ¶ 2, Ex. B).  Plaintiffs further alleged they were "similarly situated" to the individuals they seek to represent in this action.  *Id.* (*e.g.,* caption, first paragraph).

In calculating the amount in controversy, Defendants extrapolated Plaintiff Gomez's claim for damages – which Plaintiffs allege in their Complaint is "typical" of all other Sales Agents working at "<u>each and every one of the individual facilities owned and/or operated by Defendants,</u>" each of whom they allege were subject to these exact same purportedly unlawful policies – and determined that when calculated at minimum wage (and not at the overtime rate Gomez testified he is owed), the amount in controversy on Plaintiffs' First Cause of Action is 2,000 hours x $8.00 per hour, for a total of $16,000 per class member, or $10,960,000 in controversy.

Thus, when read within the context of the allegations of the Complaint, which <u>must be taken as true</u> for purposes of evaluating the amount in controversy, Gomez's testimony alone is sufficient to establish the amount in controversy is "more likely than not" in excess of $5 million.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (a court must assume the allegations of the complaint are true and the jury will return a verdict for the plaintiff on all claims made in the complaint); *Levine v. BIC USA, Inc*., 2007 U.S. Dist. LEXIS 60952, *7 (S.D. Cal. August 19, 2007) (the Court "accepts as true plaintiff's allegations as pled in the complaint").

Plaintiffs argue, without any support or citation to pertinent case law, that "Defendants have offered no evidence to show that this 2,000 hour estimate fell within the statutory time period."  Motion at 2:12-13.  To the contrary, Defendants did: Plaintiff Gomez's own testimony *admits* that the 2,000 hours for which he was owed overtime occurred "from '09 to the point when [he] left" in 2011, *see* Gomez Deposition, p. 119:1-7 (Visconti Decl., ¶ 3, Ex. A).  Such timeframe falls *squarely* within the "four (4) years preceding the filing of the original Complaint" and the

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

9.

1   statutory time period applicable to Plaintiffs' claims.  Compl. ¶ 4 (Visconti Decl., ¶ 2,
2   Ex. A).  Surely, one of the named Plaintiffs' own sworn deposition testimony, taken
3   under penalty of perjury, constitutes the "summary judgment-type evidence relevant
4   to the amount in controversy at the time of removal" that Defendants were required to
5   present to this Court in support of their Notice of Removal.[5]  *Abrego Abrego,* 443 F.3d
6   at 690 (*quoting Singer v. State Farm*, 116 F.3d 373, 374, 377 (9th Cir. 1997)).

7        Such sworn testimony is not merely an estimate of "the approximate number of
8   overtime hours [Gomez] worked," as Plaintiffs argue, *see* Motion at 2:10-11, but is
9   one of the named Plaintiffs' own testimony about how much he is seeking to recover
10  from Defendants by virtue of this lawsuit.  Put another way, it is evidence regarding
11  the amount Plaintiffs have "placed in controversy" by virtue of their First Cause of
12  Action.   Plaintiffs have not demonstrated how or why such testimony is either
13  inadmissible or unreliable.  Moreover, such sworn testimony, when read in light of the
14  allegations in Plaintiffs' Complaint, compels the conclusion that Plaintiffs' First
15  Cause of Action placed more than $5 million in controversy.

16  **B.    Defendants' Calculations on Removal Were More Than Conservative With Regard To The Amount In Controversy.**

18        Despite the fact that Plaintiffs' First Cause of Action seeks both off-the-clock
19  straight-time wages *and* overtime wages, in calculating the amount in controversy on
20  Plaintiffs' First Cause of Action, Defendants ultra-conservatively calculated the
21  amount in controversy by using the minimum wage of $8.00 per hour, which is what
22  Plaintiff Gomez testified was his "base pay" during his employment with Defendants.
23  Gomez Deposition, p. 119:1-7, 148:16-24 (Visconti Decl., ¶ 3, Ex. B).   Had
24  Defendants used an *overtime* rate of time-and-one-half his $8.00 hourly rate in their

25
26  [5] Pursuant to Federal Rule of Civil Procedure, evidence that may be used to support a motion for summary judgment includes: "depositions, documents, electronically
27  stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."
28  Fed. R. Civ. Proc. 56(c)(1)(A).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand                                10.

1  calculations, which is to what Gomez testified he was entitled for "2,000 hours of
2  overtime," his purported amount owed actually is $24,000 (2,000 hours x $12.00 per
3  hour).  When extrapolated to each of the other "similarly situated" Sales Agents
4  working at "<u>each and every one of the individual facilities owned and/or operated by
5  Defendants</u>," as Plaintiffs allege in their Complaint, the calculated amount in
6  controversy *increases* by 50%.[6]

7      Likewise, Defendants did not include the "commissions" and "spiffs," amounts
8  which Gomez testified were paid *on top of his $8 hourly rate*, in the hourly rate they
9  used to calculate the overtime Gomez claims he was owed.  *See* Gomez Deposition, p.
10 147:7-16 (Visconti Decl., ¶ 3, Ex. B).  Had Defendants included these amounts in
11 calculating Gomez's overtime due on 2,000 hours, the purported amount owed to just
12 Gomez for these overtime hours actually is $77,380 (2,000 hours x $38.69 per hour,
13 which is his overtime rate when his straight time, overtime, commissions, and spiffs
14 are included).  *See* Visconti Decl., ¶¶ 3, 9, Ex. B, F.[7]  Such amount is sufficient to
15 establish *based on Gomez's overtime claims alone* that federal subject-matter
16 jurisdiction has been met based on non-CAFA diversity jurisdiction.  *See* 28 U.S.C. §

17
18 [6] Even if the Court ignores the allegations in the Complaint that Plaintiffs are
   "similarly situated" to the other Sales Agents they purport to represent, *see* Complaint
19 *passim,* and that Plaintiffs' claims are "typical" of the other Sales Agents they purport
   to represent, Complaint ¶ 36, and – as Plaintiffs argue repeatedly in their Motion –
20 finds not all of the putative class members suffered the same damages at the same rate
   as the named Plaintiffs, *only 209* of the Sales Agents to whom Plaintiffs claim they
21 are "similarly situated" and of whom their claims are "typical" need to have been
22 damaged at a rate and amount similar to Gomez for the requisite amount in
   controversy for CAFA jurisdiction to be met on the First Cause of Action alone (*i.e.,*
23 209 putative class members x $24,000 in overtime due = $5,016,000).
   [7] Based on Exhibit 5 of Gomez's deposition, his hourly rate in November 2009
24 (inclusive of straight time, overtime, commissions, and spiffs for the year to date) was
25 $31.97, calculated by taking the total monies paid ($75,105.29) divided by total hours
   worked (2,349.5).  Visconti Decl., ¶ 3, Ex. B.  Based on a paystub Gomez produced
26 during discovery, his hourly rate in 2011 as of the time he left his employment
   (inclusive of straight time, overtime, commissions, and spiffs) was $25.79, calculated
27 by taking the total monies paid ($30,575.73) divided by total hours worked (1,185.75).
28 Using the *smaller* hourly rate, times 1.5, results in an overtime rate of $38.69. *Id.* ¶ 9,
   Ex. F.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand                    11.

1332(a) ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between "citizens of different States").  Moreover, even if the Court finds not all of the putative class members suffered the same damages at the same rate as Gomez, *only 65* of the Sales Agents whom Plaintiffs claim are "similarly situated" and of whom their claims are "typical" need to have been damaged at a rate and amount similar to Gomez for the requisite amount in controversy for CAFA jurisdiction to be met on the First Cause of Action alone (*i.e.,* 65 putative class members x $77,380 in overtime due = $5,029,700).[8]

Thus, contrary to Plaintiffs' argument that Defendants' calculations assumed "the maximum statutory penalty" and that, as a result, such calculations are "speculative," Motion at 7:18-20, Defendants' did quite the opposite.  Indeed, Defendants used minimum wage, which is the *smallest* amount possible to perform their calculations.  When the actual numbers Defendants *could have* taken into consideration in their calculations in light of Plaintiff Gomez's testimony and Plaintiffs' Complaint, Plaintiffs' First Cause of Action clearly placed more than $5 million in controversy.

**C.   Defendants Submitted Additional Evidence That Only Bolsters Plaintiff Gomez's Deposition Testimony Regarding The Amount In Controversy.**

In addition to Plaintiff Gomez's deposition testimony, Defendants submitted the Hatt Decl. in support of their Notice of Removal, which is an affidavit sworn under

---

[8] Plaintiffs repeatedly argue in their Motion that not all of the putative class members suffered the same damages at the same rate as the named Plaintiffs, justifying their motion to remand.  However, during his deposition, Gomez testified he was not paid overtime for two years, between 2009-2011.  The statutory period has continued to run even after Gomez left his employment in 2011, so it is not difficult to conceive that – if Gomez's testimony is to be believed – many of the class members' damages continued to accrue after 2011.  Moreover, since all three of the named Plaintiffs allege they were employed for at least 8 years, Plaintiffs' arguments that the putative class members' claims accrued for a shorter period of time than Gomez's did are not well taken.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

12.

penalty of perjury.  Defendants also re-submit herewith data pertaining to the value of Plaintiffs' Second Cause of Action for Defendants' purported unlawful deductions of commissions and failure to pay Plaintiffs and the putative class members for all commissions earned, which originally was submitted to this Court in the *Houpt* Action.[9]  When taking all such evidence into consideration, the totality of the evidence clearly demonstrates that the First Cause of Action alleged by Plaintiffs placed in controversy more than $5 million.

        **1.**       **The Declaration Of Daniel Hatt Provided Underlying Facts That Supported Defendants' Notice of Removal.**

First and foremost, Defendants submitted the Hatt Decl. in support of their Notice of Removal, which <u>must</u> be considered by this Court when evaluating the propriety of removal.  *Valdez*, 372 F.3d at 1117.  According to the Hatt Decl., based on Company records, between August 7, 2008, and April 5, 2013, one of the Defendants – Victoria – employed at least 685 "non-exempt Titan Agency Sales Representatives (and/or job positions with substantially similar titles and/or duties) in the State of California."  *See* Hatt Decl. ¶ 6.  Such number provided one of the elements of the calculation of the amount in controversy by Defendants.

Plaintiffs inexplicably claim, without legal support, that the class size had to be "within the four corners of Plaintiffs' initial pleading or discovery responses."  Motion at 5:24-6:1.  But, such argument runs counter to long-standing case law that a Defendant may rely on *any* "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," including affidavits or declarations outside of

---

[9] In determining whether removal is proper, the Court must consider the contents of the removal petition.  *Valdez v. Allstate Ins.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  The Court also may consider supplemental evidence proffered by the removing defendant that was not included in the removal notice.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).  Such evidence includes "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," *id.*, such as affidavits or declarations. Fed. R. Civ. P. 56; *Valdez, supra,* 372 F.3d at 1117; *Singer, supra,* 116 F.3d at 375 (in opposing remand, "defense counsel submitted declarations to show that the amount in controversy exceeded $50,000").

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

13.

1    the Plaintiffs' Complaint.  Fed. R. Civ. P. 56; *Valdez, supra,* 372 F.3d at 1117; *Cohn,*

2    *supra,* 281 F.3d at 840 n.1.  Plaintiffs have presented no argument or evidence as to

3    why the Hatt Decl. is not "summary-judgment-type evidence" or why the declaration

4    is inadmissible.

5        Plaintiffs also argue Defendants cannot rely on the Hatt Decl. to trigger the

6    thirty-day removal period.  Motion at 6:2-10.  But, again, Defendants *did not* rely on

7    this Declaration to "trigger" the removal period.  Rather, as Defendants *clearly* and

8    *repeatedly* pointed out in their Notice of Removal, Defendants determined for the first

9    time that this case was removable based on *Plaintiff Gomez's deposition,* which (after

10    repeated delay by Plaintiffs) Defendants finally were able to take on March 14, 2013.

11    *See* Defendants' Notice of Removal, ¶¶ 9, 22, 24 ("Based on Plaintiff Gomez's

12    deposition testimony, Defendants ascertained, for the first time, that this case is

13    removable because the amount in controversy exceeds the $5 million jurisdictional

14    threshold under CAFA..."); ¶ 26 ("Plaintiff Gomez's March 14, 2013, deposition

15    constitutes the "other paper" from which it may first be ascertained that the case is one

16    which has become removable.").  In that deposition, for the first time, Defendants

17    obtained evidence from Gomez's testimony as to the amount of damages, which

18    Plaintiffs failed to include mention of in their Complaint.  Defendants removed within

19    thirty days after Gomez's deposition, as required by 28 U.S.C. § 1446(b)(3).

20        Finally, Plaintiffs cite to *Jones v. WalMart Stores, Inc.*, C.D. CV 12-10799

21    MMM (CWx), slip op., in supposed support for their argument that *all* of the

22    information a defendant may rely on for purposes of removal must come from the

23    Complaint or "other paper."  Motion at 7:10-13.  However, as the removal statute

24    makes abundantly clear, there are two periods during which a defendant may remove:

25      [t]he notice of removal of a civil action or proceeding shall be
      filed within 30 days after the receipt by the defendant, through

26      service or otherwise, of a copy of the initial pleading setting
      forth the claim for relief upon which such action or proceeding

27      is based....if the case stated by the initial pleading is not
      removable, a notice of removal may be filed within thirty days

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand      14.

1      after receipt by the defendant, through service or otherwise, of a
2      copy of an amended pleading, motion, order or other paper
    from which it may first be ascertained that the case is one which
3      is or has become removable.

4  28 U.S.C. § 1446(b)(1), (3).  *See also Harris v. Bankers Life and Casualty Co.,* 425

5  F.3d 689 (9th Cir. 2005) ("The statute provides two thirty-day windows during which

6  a case may be removed – during the first thirty days after the defendant receives the

7  initial pleading **or** during the first thirty days after the defendant receives **a** paper

8  'from which it may first be ascertained that the case is one which is or has become

9  removable' if 'the case stated by the initial pleading is not removable.'").

10      Plaintiffs appear to be arguing that, when the second thirty-day period is

11  triggered, *every single* piece of evidence upon which a defendant might rely to remove

12  a case must come into a defendant's possession within thirty days of removal of the

13  case.  However, Section 1446(b) contains no such requirement.  Nor could it – if that

14  were true, a removing defendant would have to time its acquisition of *all* information

15  it expects to submit in support of its removal to occur within 30 days of removal.

16  Such requirement makes no sense.   This is particularly true since a removing

17  defendant is expected to submit "summary-judgment-type evidence relevant to the

18  amount in controversy at the time of removal," including information from its own

19  records.  *Valdez, supra,* 372 F.3d at 1117; *Cohn, supra,* 281 F.3d at 840 n.1;

20  *Lowdermilk, supra,* 479 F.3d at 1002.  Reading a requirement that a defendant acquire

21  every single piece of evidence upon which it might rely to remove within 30 days of

22  removal – including that contained in its own records – would read the second thirty-

23  day period in Section 1446(b) right out of the statute.

24      Thus, the fact that Defendants submitted the Hatt Decl. in support of their

25  Notice of Removal – which they were required to do under long-standing case law

26  regarding the submission of summary-judgment-type evidence relevant to the amount

27  in controversy – does not render their Notice of Removal invalid.

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand                                    15.

### 2.    The Declaration Of Jessica Hooper Further Bolsters Defendants' Notice of Removal.

In addition to Gomez's deposition testimony and the Hatt Decl., Defendants re-submit herewith the Declaration of Jessica Hooper ("Hooper Decl.") (Visconti Decl., ¶ 10, Ex. G), which also <u>must</u> be considered by this Court when evaluating the propriety of removal. *Valdez*, 372 F.3d at 1117.   According to the Hooper Decl., who reviewed the commission payment records of the putative class members in this and the *Houpt* Action, there were adjustments in the amount of $12,375.968.01 made *in one year* from the commission amounts advanced to California-based Sales Agents. *See* Hooper Decl., ¶ 3 (Visconti Decl., ¶ 10, Ex. G).  This declaration was submitted by Defendants in the *Houpt* Action in support of their Notice of Removal.

As noted above, the Ninth Circuit Court of Appeal found that, based on the Hooper Decl., it was clear that the putative class members' Second Cause of Action in the *Houpt* Action for unlawful commissions *alone* exceeded the minimum requirements for federal jurisdiction under CAFA.  *See* Memorandum from the Ninth Circuit Court of Appeals, July 18, 2011 (Visconti Decl., ¶ 6, Ex. D).   Although Plaintiffs have amended their allegations with regard to their unlawful commissions claim in this action, and likely will argue that the claim in the *Houpt* Action differs from the claim currently before the Court, it remains clear that this claim and more broadly the value of Plaintiffs' Complaint – particularly when evaluated in conjunction with the above evidence regarding Plaintiffs' First Cause of Action for wages due – clearly demonstrates that Plaintiffs' Complaint, in its entirety, placed in controversy more than $5 million.

## V.    DEFENDANTS NOTICE OF REMOVAL WAS TIMELY FILED.

A notice of removal must be filed "within thirty [30] days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  Since Plaintiffs' Complaint

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

16.

1  was silent as to the scope of damages sought by the putative class members or by

2  virtue of any of their causes of action, the first inkling Defendants had as to the value

3  of Plaintiffs' claims arose during Plaintiff Gomez's deposition.

4        Contrary to Plaintiffs' unsupported argument, Plaintiff Gomez's March 14,

5  2013, deposition *does* constitute the "other paper" that triggers a new thirty-day period

6  in which the case may be removed.  *Carvalho v. Equifax Info. Servs.,* 629 F.3d 876,

7  886 (9th Cir. Cal. 2010) (plaintiff's deposition testimony provided the first indication

8  the amount in controversy exceeded $5 million, and defendant timely removed within

9  thirty days of the deposition); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694-

10  96 (9th Cir. 2005) ("[t]he first thirty-day period for removal in 28 U.S.C. § 1446(b)

11  only applies if the case stated by the initial pleading is removable on its face").

12  Accordingly, Defendants' Notice of Removal, which was filed on April 12, 2013, *i.e.*

13  within thirty days after Plaintiff Gomez's deposition, was timely as required by 28

14  U.S.C. § 1446(b)(3) .

15  **VI.   THIS CASE IS THE EPITOME OF THE ABUSE AND TACTICS THAT**
16  **        CAFA WAS ENACTED TO PREVENT.**

17        As noted above, this is not the first time this case – and these Plaintiffs and

18  putative class members – have been before this Court.  After the Ninth Circuit Court

19  of Appeal found that the Complaint in the *Houpt* Action gave rise to federal

20  jurisdiction under CAFA, and that the plaintiff had failed to timely move for class

21  certification, that case was dismissed.   Plaintiffs are back, trying desperately to

22  convince the Court that, while they "will fairly protect the interests of the members of

23  the Classes," and they "have no interests antagonistic to the members of the Classes,"

24  they nevertheless want to circumscribe the value of this case to be less than $5 million

25  by their artful pleading, seeking to avoid federal jurisdiction at all costs.   This is

26  exactly the reason CAFA was enacted in the first instance.

27        Indeed, as the legislative history of CAFA makes clear, CAFA was enacted to

28  make it harder for plaintiffs' counsel – like in the instant case – to "game the system"

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

17.

and "misus[e] the jurisdictional threshold to keep their cases out of federal court" by artfully pleading around the amounts required for diversity jurisdiction.  *See* CLASS ACTION FAIRNESS ACT OF 2005, S. REP. NO. 109-14, at 4, 5, 10-11 (2005) (Visconti Decl., ¶ Ex. A).[10]  That is exactly what is going on here.

Not only is the re-pleading of the *Houpt* Case in this action indicative of such gamesmanship, but Plaintiffs' own behavior in this action demonstrates the true level Plaintiffs are trying to "misus[e] the jurisdictional threshold" to get this case remanded and/or keep this case.  Specifically, while Defendants first noticed the depositions of the named Plaintiffs Ramirez, Duarte, and Gomez on September 10, 2012, only Plaintiff Gomez has, to date, been produced for deposition.  In the ensuing 8 months, the other two named Plaintiffs either have refused or made excuses as to why they would not attend their depositions.  Visconti Decl., ¶ 12.

After removal, Plaintiffs attempted to get Defendants to agree to suspend or waive the requirements of Local Rule 23-3 with respect to their motion for class certification *and* get Defendants to agree to delay the depositions of the remaining two named Plaintiffs until after this Court has heard this Motion.  Visconti Decl., ¶ 12, Ex. I.  Clearly, Plaintiffs did not want to provide any additional testimony upon which Defendants might rely to support their Notice of Removal or this Opposition.  Plaintiffs will, at some point, have to appear for their depositions, regardless of whether their claims are pending in this Court or in the Superior Court for the County of Riverside.  The fact that they refuse to do so before this Court considers their Motion to Remand is illustrative of the "gamesmanship" present in this case.

To the extent this Court is inclined to consider Plaintiffs' arguments in support of remand, Defendants respectfully request that the Court continue any ruling and

---

[10] CAFA also was enacted to remedy "inconsistent and inadequate judicial involvement" in class actions that occur in "state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations."  *See* CLASS ACTION FAIRNESS ACT OF 2005, S. REP. NO. 109-14, at 4, 5, 10-11 (2005) (Visconti Decl., ¶ 11, Ex. H _).

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand

18.

1    order Plaintiffs Ramirez and Duarte to appear for their depositions so that the Court

2    can consider their testimony in light of the claims alleged by the named Plaintiffs on

3    behalf of the putative class.  Without such testimony, the jurisdictional issues and

4    arguments before the Court cannot be fully adjudicated on their merits.

5    **VII.   THERE IS NO BASIS FOR THE COURT TO AWARD SANCTIONS.**

6            Plaintiffs seek to have this Court award sanctions because they believe

7    Defendants' Notice of Removal was improper.  As outlined above, Defendants clearly

8    had a good faith basis upon which to remove this action, particularly in light of the

9    former proceedings between these parties during which the Ninth Circuit issued its

10   finding regarding the existence of federal jurisdiction under CAFA.

11           Moreover, under Ninth Circuit law, an order requiring the payment of fees and

12   costs is appropriate only where "the removing party lacked an objectively reasonable

13   basis for seeking removal."  *Borgman v. Insphere Ins.,* 2013 U.S. Dist. LEXIS 50515

14   *15 (D. Cal. 2013) (*quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140-41

15   (2005)).  As the *Borgman* Court noted, "removal is not objectively unreasonable

16   solely because the removing party's arguments lack merit, or else attorney's fees

17   would always be awarded whenever remand is granted."  *Id.* (*quoting Lussier v.*

18   *Dollar Tree Stores, Inc.*, 518 F. 3d 1062, 1065 (9th Cir. 2008)).  Rather, the objective

19   reasonableness of a removal depends on the clarity of the applicable law and whether

20   such law "clearly foreclosed" the arguments in support of removal.  *Id.*  Here, given

21   the history of this action and particularly in light of the very recent decision by the

22   U.S. Supreme Court in *Standard Fire*, it hardly can be said that the law "clearly

23   foreclosed" Defendants' arguments in support of removal.  Accordingly, Plaintiffs'

24   request for sanctions must be denied.

25   **VIII.  THERE IS NO BASIS FOR THE COURT TO REMAND THIS MATTER**
           **SUA SPONTE.**
26

27           In their final effort to obtain a remand back to state court, Plaintiffs argue that –

28   based on a 1990 case out of the Eastern District of Michigan – this Court should

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.            19.
Motion to Remand

remand this case *sua sponte*.  Motion at 10:9-20.  However, as outlined in full above, there is no basis upon which this Court could find that Defendants "chose to omit [the facts necessary to support the jurisdictional amount] from the removal petition." Motion at 10:13-15 (*citing Garza v. Bettcher Industries, Inc.,* 752 F. Supp. 753 (E.D. Mich. 1990)).  Moreover, in the Ninth Circuit, when assessing whether the basis upon which Defendants removed was sound, the Court is required to allow the removing party an opportunity to be heard and respond to the contentions raised by the Plaintiffs.  *See Isr. Disc. Bank, Ltd. v. Schnapp,* 215 Fed. Appx. 605 (9th Cir. Cal. 2006) (district court was required to accept full briefing and carry out fact-finding necessary to rule on whether remand was proper); *Kelton Arms Condominium Owners Ass'n v. Homestead Ins. Co.,* 346 F.3d 1190, 1193 (9th Cir. 2003) (district courts have no authority to remand *sua sponte* for procedural  defects).

## IX.    CONCLUSION

In light of the foregoing arguments and when considering all of the claims alleged by Plaintiffs and the evidence submitted by Defendants, it is clear that the amount put in controversy by the allegations contained in Plaintiffs' Complaint is at least $5 million, thereby establishing this Court's jurisdiction under CAFA. Therefore, Defendants respectfully request that Plaintiffs' Motion be denied in its entirety.  To the extent the Court is inclined to consider Plaintiffs' arguments in support of remand, Defendants respectfully request that the Court continue its ruling on the instant Motion and order Plaintiffs Ramirez and Duarte to appear for their depositions so that the Court can consider their testimony in light of the claims alleged by the named Plaintiffs on behalf of the putative class.

Dated:   May13, 2013                          /s/ Denise M. Visconti
                                             Denise M. Visconti
                                             LITTLER MENDELSON, P.C.
                                             Attorneys for Defendants

Firmwide:120100017.1 050511.1104

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

Memo of P's and A's In Opp. to Pltfs.
Motion to Remand                          20.